# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**CORY COLLINS,**

    **Plaintiff,**

v.

Case No. 2:17-CV-1028
Judge Algenon L. Marbley
Chief Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Cory Collins, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9) the Commissioner's Memorandum in Opposition (ECF No. 12), Plaintiff's Reply (ECF No. 13), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## I. BACKGROUND

On February 13, 2014,[1] Plaintiff filed applications for both supplemental security income and disability insurance benefits, alleging that he had been disabled since January 1, 2006. (R. at

---

[1] The parties and administrative law judge refer to a filing date of December 30, 2013 (ECF No. 9 at 1; ECF No. 12 at 1; R. at 25), but the record reflects a filing date of February 13, 2014. (R. at 199, 205.)

25, 199–213.)[2] Plaintiff's application was denied initially and upon reconsideration. (R. at 136–41, 143–54.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 155–60.) Administrative law judge Thomas L. Wang ("ALJ") held an initial hearing on April 6, 2016, at which Plaintiff, who was not represented by counsel, appeared. (R. at 68–76.) At the hearing, Plaintiff requested a continuance in which to seek legal representation, which the ALJ granted. (R. at 76, 287.) A supplemental hearing was held on August 19, 2016, at which Plaintiff, who was still not represented by counsel, appeared and testified. (R. at 40–67.) On October 28, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 25–35.) On September 25, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–6.) Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY[3]

**A.     Plaintiff's Testimony**

**1.     The administrative hearing on April 6, 2016**

At the initial hearing on April 6, 2016, the ALJ explained to Plaintiff about his rights to representation. (R. at 70–71.) Because Plaintiff testified that he wished to proceed with a representative, the ALJ continued the hearing. (R. at 71–72.) The ALJ advised that Plaintiff would be given a list of possible representatives and that Plaintiff could check with the Columbus Bar Association and Ohio Bar Association for attorney recommendations. (R. at 71.)

---

[2] In his applications, Plaintiff alleged disability beginning on January 1, 2005 (R. at 199, 205) but testified at the administrative hearing on August 19, 2016, that he became disabled on January 1, 2006. (R. at 45.) *See* S.S.R. 83-20, 1983 WL 31249, at *2 (Jan. 1, 1983) (providing that an applicant may change the alleged onset date in writing or through testimony at a hearing).
[3] The undersigned limits the analysis of the evidence and the administrative decision to the issues raised in the SOE.

2

## 2. The administrative hearing on August 19, 2016

At the continued administrative hearing on August 19, 2016, the ALJ acknowledged that Plaintiff was unrepresented by counsel and decided to proceed with the hearing:

> ALJ: This is a Columbus, Ohio ODAR hearing. Thomas Wang is the Administrative Law Judge. The date is August 19, 2016. This is the case of Cory Collins, Social Security number 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. The matter involves an application for Disability Insurance Benefits and Supplemental Security Income. The claimant is present, is not represented by counsel. This is the second hearing that we scheduled though. We continued the first hearing on April 6th to allow an opportunity to get counsel. Mr. Collins, you were unable to get counsel?
>
> CLMT: Yes. I was unable. We called about everybody we could.
>
> ALJ: Okay.
>
> CLMT: And one lady said she would take it, but she called. I missed the call. I called her back. It was like phone tag and then I called her another probably three times and she never called back, so –
>
> ALJ: Well, we will go forward today with our hearing. . . .

(R. at 42.)

Plaintiff testified that he alleges that he became disabled as of January 1, 2006. (R. at 45.) Plaintiff describes his disability as primarily mental and that his physical issues "makes the mental part worse" because of his anxiety. (R. at 45–46.) Plaintiff takes medication for his mental symptoms, which helps, but testified that his counselor said medication alone will not work for his post-traumatic stress disorder. (R. at 50.) Plaintiff becomes nervous around a lot of people, believing they are plotting against him or talking about him. (R. at 51.) He feels overwhelmed and his thoughts are all over the place. (*Id.*) Plaintiff testified that he did not think that his mental issues would ever become this bad again, but at the time of the hearing, he was having trouble getting his thoughts together. (R. at 59.)

3

Plaintiff previously worked as a landscaper and held a job where he only mowed grass. (R. at 52–53, 60–61.)

**B.      Vocational Expert Testimony**

Connie O'Brien testified as a vocational expert ("VE") at the August 19, 2016, administrative hearing. (R. at 60–65.) The ALJ proposed a hypothetical that presumed an individual with Plaintiff's age,[4] education,[5] past jobs, and who is capable of performing medium work who can never climb ladders, ropes, or scaffolds, but with frequent balancing, stooping, kneeling, crouching, crawling; goal-based production with work measured by end result; work limited to simple, routine and repetitive tasks and work allowed off task five percent of the day; work in a low stress job defined as only occasional changes in the work setting with interaction with the public, coworkers or supervisors limited to the occasional level. (R. at 61.) The VE testified that such an individual would be unable to perform Plaintiff's past jobs but could perform other medium exertional work that existed in significant numbers in the regional and national economies, including work as a floor waxer, lab equipment cleaner, and dry clean helper. (R. at 62.)

### III.     MEDICAL RECORDS

On April 18, 2014, Courtney Zeune, Psy.D., a state-agency psychologist, reviewed Plaintiff's medical record. (R. at 88–90.) Dr. Zeune found Plaintiff is moderately limited in his abilities to understand and remember detailed instructions and to work in coordination with or in proximity to others without being distracted by them. (R. at 88–89.) In finding that Plaintiff was

---

[4] Plaintiff was approximately thirty years old at the time of the continued administrative hearing on August 19, 2016. (R. at 40, 199, 205.) He was nineteen years old, which is defined as a younger individual age eighteen through forty-nine, on the alleged disability onset date. (R. at 33.)

[5] Plaintiff has a limited education. (R. at 33.)

also moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, Dr. Zeune opined that Plaintiff is capable of performing simple one-to-three-step tasks in a setting that does not require strict pace or production quotas. (R. at 89.) Dr. Zeune found that Plaintiff is "capable of brief, infrequent social interactions, but would do best working alone in a non-public setting where there is no close over-the-shoulder supervision." (R. at 89–90.) Dr. Zeune also found that Plaintiff "would do best in a relatively static work environment where changes are easily explained in advance." (R. at 90.)

On September 2, 2014, Karla Voyten, Ph.D., reviewed the medical record upon reconsideration. (R. at 115–17, 129–31.) Dr. Voyten agreed with the limitations found by Dr. Zeune. (*Id.*)

## IV. ADMINISTRATIVE DECISION

On October 28, 2016, the ALJ issued his decision. (R. at 25–35.) At step one of the sequential evaluation process,[6] the ALJ found that Plaintiff had not engaged in substantially

---

[6] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

5

gainful activity during the period from his amended alleged onset date of January 1, 2006. (R. at 27.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: anxiety-related and affective disorders; borderline personality traits; and opioid use disorder, in Suboxone-supported remission. (*Id.*)

At step three of the sequential process, the ALJ concluded that that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 28–30.) At step four, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can never climb ladders, ropes, or scaffolds, but can frequently balance, stoop, kneel, crouch, and crawl. Mentally, the claimant can perform goal-based production/work as measured by end result, not pace work; work limited to simple, routine, and repetitive tasks; work allowed off-task five percent of the day; work in a low stress job defined as only occasional changes in the work setting; and only occasional interaction with the public, co-workers, and supervisors.

(R. at 30.) In reaching this determination, the ALJ accorded "great weight" to the state agency consultants' assessments, but gave "no weight" to one aspect of the medical consultants' assessment:

> As for the opinion evidence, the State agency medical consultants' physical assessments and psychological consultants' mental assessments are given great weight because of their program familiarity, longitudinal view of the medical evidence of record, and their opinions are consistent with the evidence (Exhibits l A, 5A, and 6A). The record shows that the claimant has received little to no treatment for his physical complaints and that he has no more than moderate mental health symptoms, which have been relieved significantly with medication (Exhibit 13F, p. 2). However, their assessment indicating that there was insufficient evidence in order to make a determination is given no weight (Exhibit 2A)

---

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> [Disability Determination dated April 28, 2014, signed by Elaine M. Lewis, M.D. and Sarah Loch, Disability Adjudicator/Examiner].

(R. at 32.)

The ALJ concluded that Plaintiff is unable to perform any past relevant work. (R. at 33.) However, relying on the VE's testimony, the ALJ went on to find that Plaintiff is capable of performing other jobs existing in significant numbers in the national economy. (R. at 34.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

7

1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff advances two contentions of error. Plaintiff first asserts that the ALJ's RFC fails to properly account for all of Plaintiff's mental limitations or assess all of the medical opinion evidence. (ECF No. 9 at 5–11; ECF No. 13.) Plaintiff next contends that the ALJ did not properly inform Plaintiff of his rights regarding representation at the hearing or obtain a knowing and informed waiver of such rights, denying Plaintiff due process. (ECF No. 9 at 11–18.)

Turning to his first contention of error, Plaintiff specifically argues that the ALJ, having given great weight to the state agency psychologists' assessments, failed to incorporate the relevant mental limitations from their assessments into his RFC analysis and failed to explain why he did not do so.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v.*

8

*Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

Here, as discussed above, the ALJ gave "great weight" to the state agency psychologists' opinions because of "their program familiarity, longitudinal view of the medical evidence of record, and their opinions are consistent with the evidence." (R. at 32.) The ALJ, therefore, appeared to adopt the opinions of Drs. Zeune and Voyten in total. These doctors specifically agreed, *inter alia*, that Plaintiff was capable of understanding, remembering, and performing simple 1-3 step tasks and "capable of brief, infrequent social interactions, but would do best working alone in a non-public setting where there is no close over-the-shoulder supervision" and "would do best in a relatively static work environment where changes are easily explained in advance." (R. at 89–90; 116, 130.) The ALJ's mental RFC, however, does not address all of these limitations. (R. at 40.) While the ALJ limited Plaintiff to "only occasional interaction with the public, co-workers, and supervisors" (R. at 40), occasional interaction is different than a

non-public setting with no close over-the-shoulder supervision. Nowhere in his opinion does the ALJ explain why he failed to incorporate these limitations identified by the state agency psychologists even though he gave their opinions great weight. "Although an ALJ is not required to discuss every piece of evidence in the record to support her decision, an ALJ must explain why she did not include the limitations from an opinion of a medical source in her determination of the claimant's RFC." *Perrine v. Berryhill*, No. 1:18-cv-49, 2019 WL 1331597, at *7 (N.D. Ohio, Mar. 25, 2019). "This is particularly important where two State Agency psychologists imposed the same" restrictions "and the ALJ's decision accorded 'great weight' to those opinions without addressing why such limitation[s were] ultimately omitted." *Id*. (explaining that "SSR 96-8p provides that '[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted'") (quoting *Moscorelli v. Colvin*, No. 1:15CV1509, 2016 WL 4486851, at *3 (N.D. Ohio Aug. 26, 2016)). The ALJ's failure to explain the omission of these restrictions renders this Court unable to assess the ALJ's reasoning and understand why he did not incorporate the state agency psychologists' limitations in his RFC. *See* S.S.R. 96–8p, 1996 WL 374184, at *6–7; *Reed v. Comm'r of Soc. Sec.*, No. 1:16-CV-572, 2017 WL 1531872, at *6 (W.D. Mich. Apr. 28, 2017) (remanding case where, *inter alia*, "[t]he ALJ did not explain why he did not adopt this portion of the opinion [doctor's opinion as to the plaintiff's limitations] despite giving it great weight").

The Commissioner, however, contends that any failure to include the limitations of non-public setting and no close over-the-shoulder supervision amounts to harmless error because of the VE's testimony that Plaintiff could work as a floor waxer and dry clean helper. (ECF No. 12 at 7.) The Commissioner argues that the Dictionary of Occupational Titles describes the level of

taking instructions/helping is "not significant" and that "those jobs do not require hearing or talking." (*Id.*) The Commissioner concludes that this information "suggests that Plaintiff would not be around people at those jobs" and, therefore, argues that failure to include the non-public setting and no close over-the-shoulder supervision in the RFC is harmless because the outcome would not have changed. (*Id.*)

      The Commissioner's argument is not well taken. First, the ALJ did not include the restrictions of non-public setting, no over-the-shoulder supervision, and relatively static work environment where changes are easily explained in advance articulated by Drs. Zeune and Voyten when examining the VE. (R. at 60–65.) It is true that an ALJ must only include those restrictions he or she finds credible in hypothetical questions to the VE. *Perrine*, 2019 WL 1331597, at *7; *Parks Parks v. Soc. Sec. Admin.,* 413 F. App'x 856, 865 (6th Cir. March 15, 2011). However, as discussed above, where the ALJ gives great weight to the state agency psychologists' opinions and then fails to explain why certain restrictions were omitted, "[t]he court cannot determine whether the ALJ's hypothetical adequately incorporated all of Plaintiff's limitations. Absent such an explanation, the court is left to speculate." *Perrine*, 2019 WL 1331597, at *7; *see also Reynolds v. Comm'r of Soc. Sec*., 424 F. App'x 411, 414 (6th Cir. 2011) ("[A]n ALJ must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'") (quoting 5 U.S.C. § 557(c)(3)(A)); *Cooper v. Comm'r of Soc. Sec*., 2018 WL 6287996, at *5 (S.D. Ohio Dec. 3, 2018) (recommending remand where ALJ assigned significant weight to the state-agency psychologists' opinions but failed to include a limitation or explain how the RFC accommodated that limitation), *adopted by* 2019 WL 95496 (S.D. Ohio Jan. 3, 2019).

Moreover, especially where the Court cannot evaluate the ALJ's reasoning, accepting the Commissioner's attempt to explain this omission would result in the Court "engaging in *post hoc* rationalization, which is prohibited." *Miller v. Comm'r of Soc. Sec.*, No. 1:13–CV–1872, 2014 WL 3950912, at *13 (N.D. Ohio Aug. 12, 2014) (remanding action where, *inter alia*, "the Court is unable to ascertain the ALJ's intent" because the ALJ "did not discuss her decision to omit the limitation" contained in a medical opinion to which the ALJ attributed "full weight"); *see also* S.S.R. 96-8p; *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) ("In reviewing an ALJ's findings and conclusions, this Court shall not 'accept appellate counsel's *post hoc* rationalization for agency action in lieu of [accurate] reasons and findings enunciated by the Board.'") (quoting *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991)); *Garrett v. Berryhill*, No. 3:17-cv-00049, 2018 WL 1521763, at *7 (S.D. Ohio Mar. 28, 2018) (remanding where "the Commissioner improperly relies on *post hoc* rationalizations to substitute for the ALJ's deficient consideration of Plaintiff's Crohn's disease before May 31, 2014"); *Bookout v. Comm'r of Soc. Sec.*, No. 3:13-cv-463, 2014 WL 4450346, at *7 (E.D. Tenn. Sept. 10, 2014) (remanding case where, *inter alia*, "the ALJ adopted Dr. Fletcher's opinion in its entirety" but "ignored" certain limitations and stating that the ALJ "had a duty to explain" why she declined to adopt the limitations).

In short, the ALJ, after giving great weight to the state agency psychologists' opinions, failed to include limitations from those opinions and did not explain this omission. For the reasons discussed above, the ALJ's failure to include such limitations is not harmless error.[7]

---

[7] This finding obviates the need to for in-depth analysis of Plaintiff's second contention of error regarding due process. The Court, however, encourages the Commissioner to address this contention if the Court ultimately remands the case.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence does not support the ALJ's decision denying benefits. Based on the foregoing, it is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date: April 8, 2019                 s/ *Elizabeth A. Preston Deavers*
                                         ELIZABETH A. PRESTON DEAVERS
                                         CHIEF UNITED STATES MAGISTRATE JUDGE